**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

STORED VALUE SOLUTIONS, INC.,

        Plaintiff,

v.

        C.A. No. 09-495-KAJ

CARD ACTIVATION TECHNOLOGIES, INC.,

        Defendant.

**CARD ACTIVATION TECHNOLOGIES, INC.'S ANSWERING BRIEF IN**
**OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**OF INVALIDITY DUE TO ANTICIPATION AND OBVIOUSNESS**

*Of Counsel:*

J. David Wharton
Mark J. Peterson
Nora M. Kane
STINSON MORRISON HECKER LLP
1299 Farnam Street, Suite 1500
Omaha, NE 68102
(402) 342-1700
jwharton@stinson.com
mpeterson@stinson.com
nkane@stinson.com

and

Keith H. Orum
Mark D. Roth
Orum & Roth, LLC
53 W. Jackson Boulevard, Suite 1616
Chicago, Illinois 60604
Telephone: (312) 922-6262
Facsimile: (312) 922-7747
keithorum@gmail.com
markdroth@gmail.com

January 14, 2011

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com

*Attorneys for Defendant*
*Card Activation Technologies, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

I.      NATURE AND STAGE OF THE PROCEEDINGS ................................................... 1

II.     SUMMARY OF THE ARGUMENT .......................................................................... 1

III.    STATEMENT OF FACTS ........................................................................................... 4

        A.      Undisputed Facts .............................................................................................. 4

        B.      Disputed Facts .................................................................................................. 5

IV.     ARGUMENT ................................................................................................................ 5

        A.      Summary Judgment Standard ........................................................................... 5

        B.      The '859 Patent is Presumed Valid and Was Reexamined In Light of SVS'
                Alleged Prior Art .............................................................................................. 5

                1.      The USPTO Has Consistently Found the "Clerk Authorization Code"
                        to be Patentable Subject Matter ........................................................... 6

                2.      The References Upon Which SVS Relies Were Considered By the
                        Re-Examiner .......................................................................................... 6

        C.      The MicroTrax Manual Is Not Prior Art .......................................................... 8

                1.      The MicroTrax Manual Is Not a "Printed Publication" ......................... 8

                2.      Lineck Testimony Is Insufficient Without Corroboration .................... 9

                3.      Lineck Testimony in Combination With a Date on the MicroTrax
                        Manual Is Insufficient ......................................................................... 11

        D.      SVS Applied Insufficient Analyses Under §§ 102 & 103 ............................. 13

                1.      Anticipation ......................................................................................... 13

                        a.      Arrangement ............................................................................ 13

                        b.      Enablement .............................................................................. 15

                2.      Obviousness ......................................................................................... 17

                        a.      SVS, Through Its Expert Ms. Breitzke Or Otherwise, Has Not
                                Mentioned Or Addressed a Required Element to Prove

Obviousness Under § 103—Reasonable Expectation of
Success....................................................................................... 17

b.  Ms. Breitzke's Opinion Regarding Obviousness of
Independent Claims Based on Combination of Prior Art Is
Conclusory and Thus Inadmissible ............................................ 18

E.  SVS Misapplies and Ignores the Claim Construction ......................................... 20

1.  SVS Disregards the Court's Claim Construction Relating to the Three
Distinct Authorization Codes in the '859 Patent..................................... 20

2.  SVS Disregards the Court's Claim Construction Relating to the Term
"Debit Purchase Transaction" in the '859 Patent .................................... 25

**V.  CONCLUSION .......................................................................................................... 28**

## TABLE OF AUTHORITIES

**CASES**

*Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341 (Fed. Cir. 2008)....................................................15

*Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282 (Fed. Cir. 2009)....................................................25

*Adenta GmbH v. OrthoArm, Inc.*, 501 F.3d 1364 (Fed. Cir. 2007)............................................10

*American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350 (Fed. Cir. 1984) ...............6

*Amgen, Inc. v. F. Hoffman-LA Roche, Ltd.*, 580 F.3d 1340 (Fed. Cir. 2009).............................18

*Carella v. Starlight Archery & Pro Line Co.*, 804 F.2d 135 (Fed. Cir. 1986)............................12

*CAT v. Toys "R" Us Delaware, Inc.*, Case No. 1:09-cv-02020 (N.D. Ill. 2009)...........................7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .............................................................14, 16, 19

*Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560 (Fed. Cir. 1988)...............................8

*Custom Accessories, Inc. v. Jeffrey-Allan Industries, Inc.*, 807 F.2d 955 (Fed. Cir. 1986) ..........6

*Diversitech Corp. v. Century Steps, Inc.*, 850 F.2d 675 (Fed. Cir. 1988) ..................................25

*Elan Pharm., Inc. v. Mayo Foundation*, 346 F.3d 1051 (Fed. Cir. 2003) ..................................16

*Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*, 471 F.3d 1369 (Fed. Cir. 2006) ....................14

*Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354 (Fed. Cir. 1999) ...................................10

*Graham v. John Deere Co.*, 383 U.S. 1 (1966)........................................................................20

*Impax Labs., Inc. v. Aventis Pharms., Inc.*, 545 F.3d 1312 (Fed. Cir. 2008) .............................17

*In re Gleave*, 560 F.3d 1331 (Fed. Cir. 2009)..........................................................................17

*In re Kubin*, 561 F.3d 1351 (Fed. Cir. 2009) ...........................................................................18

*In re Lister*, 583 F.3d 1307 (Fed. Cir. 2009)........................................................................8, 9

*In re Skvorecz*, 580 F.3d 1262 (Fed. Cir. 2009)......................................................................24

*Innogenetics, N.V. v. Abbott Laboratories*, 512 F.3d 1363 (Fed. Cir. 2008).............................20

*Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728 (Fed. Cir. 2002).....................................11

*KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007) .................................................. 21

*Laboratory Skin Care, Inc. v. Limited Brands, Inc.*, Case No. 1:06-cv-00601-LPS (D. Del. Dec. 6, 2010) .......................................................................................................... 15

*Lindemann Maschinenfabrik GMBH v. Am. Hoist & Derrick Co.*, 730 F.2d 1452 (Fed. Cir. 1984) ........................................................................................................................ 15

*Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209 (Fed. Cir. 2006) ......................... 21

*LP Matthews LLC v. Bath & Body Works, Inc.*, 458 F.Supp.2d 198 (D. Del. 2006) ................... 21

*Mannesmann Demag Corp. v. Engineered Metal Products Co., Inc.*, 605 F.Supp. 1362 (D. Del. 1985) ................................................................................................................... 9

*Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363 (Fed. Cir. 2009) ......................... 11

*Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersystems GmbH*, 2008 WL 410413 (D. Colo. Feb. 12, 2008) ....................................................................................... 29

*Minnesota Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294 (Fed. Cir. 2002) .................... 17

*Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359 (Fed. Cir. 2008) .................................. 14, 15

*Neutrino Dev't Corp.  v. Sonosite Inc.*, 337 F.Supp.2d 942 (S.D. Tex. 2004) ...................... 12, 13

*NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005) .................................... 21

*Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348 (Fed. Cir. 2007) ............................................... 6

*Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565 (Fed. Cir. 1991) ...... 25

*Taurus IP, LLC v. DaimlerChrysler Corp.*, 559 F.Supp.2d 947 (W.D. Wis. 2008) .................... 29

*The Barbed Wire Patent*, 143 U.S. 275 (1892) ............................................................... 10

*Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325 (Fed. Cir. 2010) ........................ 15

*Woodland Trust v. Flowertree Nursery*, 148 F.3d 1368 (Fed. Cir. 1998) ............................ 10, 11

**STATUTES**

35 U.S.C. § 102 ............................................................................................... passim

35 U.S.C. § 103 ............................................................................................... passim

35 U.S.C. § 282 ...................................................................................................... 5

35 U.S.C. § 301 ...................................................................................................... 8

**RULES**

Fed. R. Civ. P. 26 ............................................................................................................... 2

Fed. R. Civ. P. 56 ........................................................................................................... 5, 13

I.      **NATURE AND STAGE OF THE PROCEEDINGS**

Both parties have moved for summary judgment on the issue of invalidity. Card Activation Technologies, Inc. ("CAT") has also filed a motion to exclude the testimony of SVS' expert, Lori Breitzke.  Stored Value Solutions, Inc. ("SVS") has not made a similar challenge to CAT's expert.  This is CAT's Answering Brief in opposition to SVS' Motion for Summary Judgment of Invalidity Due To Anticipation and Obviousness.

II.     **SUMMARY OF THE ARGUMENT**

SVS did not and cannot meet the steep burden of proving invalidity of the '859 Patent by clear and convincing evidence.  SVS' Motion for Summary Judgment should be denied on a number of bases.  Many of these form the foundation for CAT's Motion for Summary Judgment. (D.I. 109 & 110).

**Corroboration**

The Court's inquiry can begin and end with whether SVS bases its summary judgment motion on a reference that is actually prior art.  SVS relies upon the "MicroTrax Manual" reference to assert anticipation under § 102 and obviousness under § 103.  (D.I. 106-2-10, Ex. 4-Parts 1-9 to Ex. A, MicroTrax Manual).  However, SVS did not and cannot establish that the MicroTrax Manual constitutes prior art.

Century-old United States Supreme Court precedent and a long line of Federal Circuit cases require corroboration to establish that a reference is a "printed publication" and, thus, potentially invalidating prior art.  SVS, however, has made no attempt to corroborate the MicroTrax Manual.  This insurmountable evidentiary infirmity is dispositive of SVS' Motion for Summary Judgment.

**SVS Applies Insufficient Analyses Under §§ 102 & 103.**

SVS' sole expert, Ms. Breitzke, fails to address essential requirements to establish anticipation under § 102 (*i.e.*, arrangement and enablement) and obviousness under § 103 (*i.e.*, reasonable expectation of success). Ms. Breitzke's Rule 26 reports and her deposition testimony reveal a complete lack of knowledge of these requirements, and SVS' brief in support of its Motion for Summary Judgment likewise fails to mention or address arrangement, enablement, or reasonable expectation of success. In addition to applying the inadequate analyses under §§ 102 and 103, Ms. Breitzke's conclusory obviousness opinion fails to articulate any reasoning or rational underpinnings for her conclusions.

One of ordinary skill in the art must provide evidence or testimony of arrangement and enablement under § 102, and a reasonable expectation of success under § 103. The parties agree that one of ordinary skill in the art is an expert having a bachelor's degree in Computer Science, or the equivalent, and one to two years of experience designing software and systems that dealt with debit cards and their activation. The parties agree that a person of ordinary skill in the relevant art in the field would have had one to two years of experience in payment systems. (D.I. 103 @ 29 & n.23). Ms. Breitzke was the only witness identified by SVS under Rule 26 as one skilled in the art. Because Ms. Breitzke cannot testify beyond the opinions she expressed in her Rule 26 reports and her deposition, and because she failed to address the requirements of arrangement, enablement, and reasonable expectation of success, SVS is unable to establish these critical requirements to show a *prima facie* case of invalidity.

In its brief in support of summary judgment, SVS now appears to be attempting to distance itself from Ms. Breitzke through attorney argument that the '859 Patent is anticipated or obvious in light of the alleged prior art. Yet, SVS' arguments also fail to address the essential requirements under §§ 102 and 103.

**SVS' Arguments Are Based Upon Its Previously Rejected Claim Construction and Are Contrary to This Court's *Markman* Order**

SVS' expert opinion and arguments are based on a claim construction inconsistent with the Court's *Markman* Order.  In its proposed claim construction, SVS argued that the '859 Patent contained only two types of authorization codes, the "clerk authorization code" and the "customer authorization code," and, accordingly, that the "[general] authorization code" be construed to incorporate the "clerk authorization code" and the "customer authorization code." (D.I. 61 at 22-23).  SVS argued that the "[general] authorization code" would be satisfied by any action which would likewise satisfy the "clerk authorization code" or the "customer authorization code."  (D.I. 43 at 23).  The Court expressly rejected SVS' argument.  (D.I. 61 at 24).

The Court instead adopted CAT's proposed construction and construed the '859 Patent as disclosing three distinct codes paired with three distinct functions:

- Entering a clerk authorization code for initiating a debit purchase transaction

- Entering a customer authorization code for authorizing access to a customer data base of a host data processor

- Entering an authorization code through the keypad for having the computer initiate communication with a host data processor.  [This Court referred to this as the "general authorization code" (D.I. 61 at 22-23)].

(D.I. 61 at 24).

SVS and Ms. Breitzke consistently ignore the Court's claim construction by repeatedly and improperly conflating the codes and disregarding their distinct functions.  Argument that only two types of authorization codes exist and that the "[general] authorization code" is satisfied by the "clerk authorization code" or "customer authorization code" permeates Ms. Breitzke's reports, her testimony, and SVS' brief.

Similarly, Ms. Breitzke and SVS consistently disregard the Court's claim construction of the term "debit purchase transaction" as "*a purchase transaction* made using a debit styled card." (D.I. 61 at 15) (emphasis added).   Instead, SVS and Ms. Breitzke apply SVS' rejected construction to assert that "debit purchase transaction" encompasses *any* transaction using a debit styled card, even returns, voids, and credits, which are clearly not debit purchase transactions.

Under a proper application of the Court's claim construction, the MicroTrax Manual neither anticipates any claim of the '859 Patent nor does it render any claim obvious.  (*See* D.I. 105-7, Ex. G, Grimes Rebuttal Report at ¶¶53-81; Ex. 2, Grimes Surrebuttal Report at ¶¶30-74).

## III.   STATEMENT OF FACTS

SVS spends over twenty pages setting forth 172 separately-numbered paragraphs, essentially asserting that each statement set forth therein is undisputed by CAT.   That is incorrect, and CAT does in fact dispute many of SVS' "undisputed facts."

### A.   Undisputed Facts

In an effort to conserve resources and simplify the Court's tasks, CAT does not dispute that certain of SVS' Statements of Fact are in some instances accurate quotations or depictions of the '859 Patent, the alleged prior art, and portions of the Court's claim construction Order.   CAT does not, however, agree with or concede the inferences and conclusions which SVS purports to draw therefrom or to argue in its brief.   Therefore, the following Statements of Fact may be considered undisputed for the purpose set forth above:   ¶¶3, 5, 12-14, 16-18, 20-21, 26, 28, 30, 33-34, 37-38, 42-43, 53, 56, 59, 63, 66-67, 69, 71, 73, 75, 78, 82, 85, 88, 92, 97, 99, 101, 103, 105-106, 108, 110, 114, 116, 118, 121-122, 125, 127, 129, 131, 133, 135, 137, 139, 141, 143, 145, 147, 149, 151, 154-160, 164, 166, 169, and 171.

**B.      Disputed Facts**

The following Statements of Facts are expressly controverted by CAT, as each relies upon and assumes that the MicroTrax Manual constitutes prior art, and/or misapplies, misconstrues or simply ignores the Court's claim construction:  ¶¶4, 6-11, 15, 19, 22-25, 27, 29, 31-32, 35-36, 39-41, 44-52, 54-55, 57-58, 60-62, 64-65, 68, 70, 72, 74, 76-77, 79-81, 83-84, 86-87, 89-91, 93-96, 98, 100, 102, 104, 107, 109, 112-113, 115, 117, 119-120, 123-124, 126, 128, 130, 132, 134, 136, 138, 140, 142, 144, 146, 148, 150, 152-153, 161-163, 165, 167-168, 170, 172 (there is no ¶111 [sic]).  CAT provides the basis for these disputes in the appropriate sections of the Argument, below.

**IV.   ARGUMENT**

**A.      Summary Judgment Standard**

Rule 56 was amended effective December 1, 2010, and now requires that SVS show the absence of a genuine dispute as to any material fact.  Fed. R. Civ. P. 56(c)(1)(B).  SVS cannot meet the standard, as it has failed to corroborate publication of the MicroTrax Manual.  Summary judgment therefore must be denied because the MicroTrax Manual cannot be presented "in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  SVS has also failed to establish a *prima facie* case of anticipation or obviousness, and summary judgment should be denied on this basis as well.  Fed. R. Civ. P. 56(a).

**B.      The '859 Patent is Presumed Valid and Was Reexamined In Light of SVS' Alleged Prior Art**

Patents enjoy a statutory presumption of validity.  35 U.S.C. § 282.  SVS must establish invalidity by clear and convincing evidence.  *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1359 (Fed. Cir. 2007).  Because the '859 Patent emerged from a reexamination wherein SVS' alleged prior art was considered, SVS must overcome a very heavy presumption in favor of the '859

Patent's validity. *Custom Accessories, Inc. v. Jeffrey-Allan Industries, Inc.*, 807 F.2d 955, 961 (Fed. Cir. 1986) ("[A]n examiner's decision on an original or reissue application is evidence the court must consider in determining whether the party asserting invalidity has met its statutory burden by clear and convincing evidence, and that, upon reissue, the burden of proving invalidity [is] made heavier.") (citation & internal quotations omitted); *cf. American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1364 (Fed. Cir. 1984), *cert. denied,* 469 U.S. 821 (1984) (upon reissue in light of prior art before the district court, the "burden of proof of unpatentability has become more difficult to sustain").

      *1.*    *The USPTO Has Consistently Found the "Clerk Authorization Code" to be Patentable Subject Matter*

The original examination of the '859 Patent resulted in the Examiner concluding that the "clerk authorization code" was patentable subject matter. (D.I. 44-3, Ex. 4 at 52 of 74). During claim construction, this Court relied on the prosecution history in determining that the "clerk authorization code for initiating a debit purchase transaction" was a distinct code with a distinct function from the "general authorization code for initiating communication with a host data processor." (D.I. 61 at 24). The '859 Patent recently emerged from reexamination. (D.I. 111-1, Ex. 3). The Re-Examiner also found that the "clerk authorization code for initiating a debit purchase transaction" was patentable subject matter. (*Id.*). This same "clerk authorization code" is now present in each of the independent claims of the '859 Patent.

      *2.*    *The References Upon Which SVS Relies Were Considered By the Re-Examiner*

In support of its Motion for Summary Judgment, SVS relies upon two references, U.S. Patent No. 5,732,136, entitled "Merchant Specific Debit Card Verification System," issued to David L. Murphree and Leslie A. Speck on March 24, 1998 ("Murphree") and the MicroTrax Manual. (D.I. 102 & 103). Both of these references appear on the face of the Reexamination

Certificate (D.I. 111-1, Ex. 3), and are likewise set forth in an IDS within the file history of the '859 reexamination proceeding.   Each IDS contains a notation entered by the Re-Examiner specifically stating that the MicroTrax Manual and Murphree references were considered.  (D.I. 111-1 at 164 of 174 (MicroTrax Manual) and 163 of 174 (Murphree)).

Furthermore, Ms. Breitzke's reports and SVS' brief rely on identical arguments as set forth in a document entitled "Preliminary Invalidity Contentions" that SVS' counsel prepared for an SVS indemnitee in an infringement matter pertaining to the '859 Patent.  *CAT v. Toys "R" Us Delaware, Inc.*, Case No. 1:09-cv-02020 (N.D. Ill. 2009) (D.I. 111-2, Ex. 6).  CAT submitted and specifically called those contentions to the Re-Examiner's attention (D.I. 111-2, Ex. 8), and notwithstanding the argument asserted by SVS' counsel therein, the Re-Examiner issued the Reexamination Certificate, specifically finding that the "clerk authorization code for initiating a debit purchase transaction" was patentable subject matter.  (D.I. 111-1, Ex. 3).  Ms. Breitzke testified that her opinions as to invalidity of the "clerk authorization code" with respect to the MicroTrax Manual were consistent with these "Preliminary Invalidity Contentions."  (D.I. 111-1, Ex. 1, Breitzke Dep. at 183:14-201:20).[1]

There is no dispute that the Re-Examiner considered the "Preliminary Invalidity Contentions," as he specifically noted:

> The IDS filed 6/4/2010 has been considered as on the attached sheet.  All of the items are litigation materials.  The items *have been considered*, but have been lined through as they will not be printed on the reexamination certificate.

(D.I. 111-2, Ex. 7) (emphasis added).

> Note that litigation materials are lined through as not considered.  Information that does not appear to be "patents or printed publications" as identified in 35 U.S.C. 301 *have been considered* to the same extent as described above (unless otherwise noted), *but have been lined through and will not be printed on any resulting reexamination certificate.*

---

[1]       SVS is not relying upon Murphree with regard to the "clerk authorization code."

(D.I. 111-2, Ex. 9) (emphasis added).

SVS has not, and cannot, overcome the very heavy presumption in favor of validity of the '859 Patent, especially in light of the issuance of the Reexamination Certificate over the MicroTrax Manual and Murphree references.

### C.     The MicroTrax Manual Is Not Prior Art

Mistakenly, SVS asserts that there is no dispute regarding whether the MicroTrax Manual is prior art.  (D.I. 103 at 29).  This is incorrect because SVS has not adduced corroborating evidence to prove that the MicroTrax Manual is prior art.  Proof that a reference is a printed publication for prior art purposes requires corroboration that before the critical date, the reference was sufficiently accessible to the public interested in the art.

Dissemination and public accessibility are the keys to the legal determination whether a prior art reference was "published."  *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1568 (Fed. Cir. 1988) (citations omitted).  SVS bears the burden of establishing that the alleged prior art references were publicly accessible prior to the critical date of the '859 Patent.  *In re Lister*, 583 F.3d 1307, 1311, 1316-17 (Fed. Cir. 2009) ("[P]ublic accessibility has been called the touchstone in determining whether a reference constitutes a printed publication bar under 35 U.S.C. § 102 (b) (citation omitted)).  The MicroTrax Manual and the related testimony adduced by SVS are insufficient, as a matter of law, to meet this burden.

### 1.     The MicroTrax Manual Is Not a "Printed Publication"

SVS relies upon the MicroTrax Manual in order to establish anticipation under § 102 and obviousness under § 103 of the independent claims of the '859 Patent.  SVS apparently believes that the date affixed on the MicroTrax Manual is sufficient evidence that it is prior art.  (D.I. 103 at 3, ¶10; D.I. 106-2 at 5 of 44).  The well-established law requiring corroboration says otherwise.

The mere appearance of a date on a document does not establish dissemination to the public and thus a "printed publication." *See In re Lister*, 583 F.3d at 1316-17 (concluding that a manuscript *registered with the copyright office* was not prior art under § 102 (b) because the patent office failed to produce sufficient evidence to show that the manuscript was publicly accessible prior to the critical date); *see also Mannesmann Demag Corp. v. Engineered Metal Products Co., Inc.*, 605 F.Supp. 1362, 1366-67 (D. Del. 1985) (concluding that a patentee's prior publication was not prior art under 102(b) and noting "[a]bsent more, the mere fact that the *Demag* brochure was dated, '6.77,' is hardly evidence that the brochure was actually disseminated to the relevant public as of that date.").

Discovery is closed.  It is impossible for SVS to present the MicroTrax Manual at trial in an admissible form, as SVS did not identify or produce corroboration that the MicroTrax Manual was publicly disseminated.  At best, the date affixed on the MicroTrax Manual shows that it was printed on that respective date, but a date, standing alone, cannot prove public dissemination.

### 2. *Lineck Testimony Is Insufficient Without Corroboration*

The only evidence SVS disclosed related to the MicroTrax Manual is the deposition testimony of Tom Lineck, a former principal with MicroTrax.  Mr. Lineck's deposition was taken June 17, 2008, in *Card Activation Technologies, Inc. v. Walgreen Co.*, *Card Activation Technologies, Inc. v. OfficeMax,* and *Card Activation Technologies, Inc. v. Barnes & Noble, Inc.,* three infringement actions pending at the time in the Northern District of Illinois.  (D.I. 98).

Mr. Lineck's testimony alone is insufficient to show that the MicroTrax Manual was publicly disseminated prior to the critical date.  "A patent cannot be invalidated based on one person's testimony alone without corroborating evidence, particularly documentary evidence." *Adenta GmbH v. OrthoArm, Inc.*, 501 F.3d 1364, 1371 (Fed. Cir. 2007); *accord Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1367 & n.10 (Fed. Cir. 1999).  In *The Barbed Wire*

*Patent*, 143 U.S. 275, 284 (1892), the Supreme Court commented on the dangers of invalidating

a patent based upon oral testimony standing alone:

> In view of the unsatisfactory character of testimony, arising from the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury, courts have not only imposed upon defendants the burden of proving such devices, but have required that the proof shall be clear, satisfactory, and beyond a reasonable doubt.  Witnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be dependent upon for accurate information.

*See also Woodland Trust v. Flowertree Nursery*, 148 F.3d 1368 (Fed. Cir. 1998):

> The Supreme Court's view of human nature as well as human recollection, whether deemed cynical or realistic, retains its cogency.  This view is reinforced, in modern times, by the ubiquitous paper trail of virtually all commercial activity.  It is rare indeed that some physical record (e.g., a written document such as notes, letters, invoices, notebooks or a sketch or drawing or photograph showing the device, a model, or some other contemporaneous record) does not exist.

*Woodland Trust*, 148 F.3d at 1373.

Corroboration is required regardless of whether the witness is an interested party or an

uninterested party.  *Id.* at 1367-68.  "Reliable evidence of corroboration preferably comes in the

form of physical records that were made contemporaneously with the alleged prior invention."

*Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 743 (Fed. Cir. 2002) (citations omitted).

"Because uncorroborated oral testimony, particularly that of interested persons recalling long-

past events, does not, of itself, provide the clear and convincing evidence required to invalidate a

patent[.]"  *Woodland Trust*, 148 F.3d at 1369.  A witness' uncorroborated testimony is suspect as

clear and convincing evidence if he testifies concerning prior use or prior invention.  *Martek

Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1375-76 (Fed. Cir. 2009) *reh'g & reh'g en

banc* denied.

SVS has not identified or produced any documents to corroborate Mr. Lineck's

testimony.  When Mr. Lineck was served with his subpoena, it included a Request for MicroTrax

documents predating September 18, 1995, which would potentially corroborate public dissemination of the MicroTrax Manual.  (Ex. 1, Excerpts from Tom Lineck Dep. at 116:17-24).  Mr. Lineck testified that he did not produce any documents in response to the subpoena *duces tecum*, aside from the manuals marked during his deposition.  (*Id.* at 116:3-16; 116:25-120:9).  SVS cannot adduce any evidence of corroboration of the MicroTrax Manual at trial.  If it was indeed publicly disseminated prior to September 18, 1995, there would have been, as the Federal Circuit noted in *Woodland Trust*, a "ubiquitous paper trail of [this] commercial activity," such as "notes, letters, invoices, notebooks," or some other "contemporaneous record." *Woodland Trust*, 148 F.3d at 1373.  SVS can show nothing of the kind.

3.   *Lineck Testimony in Combination With a Date on the MicroTrax Manual Is Insufficient*

In *Carella v. Starlight Archery & Pro Line Co.*, 804 F.2d 135 (Fed. Cir. 1986), the Federal Circuit noted that unsupported oral testimony "must be regarded with suspicion and subjected to close scrutiny."  *Id.* at 138 (citations omitted).  In *Carella*, the proponent of the alleged prior art submitted deposition testimony from a witness who claimed to sell invalidating prior art.  An attempt was made to corroborate the testimony with advertisements from a mailer and a magazine advertisement, which both bore dates predating the critical date to the patent-in-suit.  The deponent testified to sales subsequent to the date of the mailer and the publication of the magazine.

The District Court found this evidence insufficient to corroborate the assertion that the alleged prior art was known or used and described in a printed publication prior to the invention date or that it was on sale more than one year before the patentee's application filing date.  *Carella*, 804 F.2d at 138.  The Federal Circuit affirmed, concluding that the District Court was correct.  *Id.* at 139.

Similarly, in *Neutrino Development Corp. v. Sonosite Inc.*, 337 F.Supp.2d 942 (S.D. Tex. 2004), the court held that evidence similar to the dated MicroTrax Manual was insufficient to corroborate a witness' testimony of prior use or sale.  CAT submits that the following analysis is equally appropriate in this case:

> Sonosite asserts that a device embodying each claim of the disputed patent was on sale prior to September 9, 1996, the critical date for determining whether the on-sale bar applies.  Specifically, Sonosite asserts that Diasonics Ultrasound Inc. ("Diasonics") advertised and sold its . . .  Compact System prior to the critical date.  To support this contention, Sonosite relies on the declaration of David Sherman[.]  Sherman's declaration states that he was "personally involved in the sales process for the Impact VFI portable ultrasound imaging device, also known and marketed as the Compact VFI and the Diasonics Compact System, which was sold by Diasonics and manufactured by Ausonics Pty. Ltd.". . .  Sherman goes on to state that "Diasonics first placed this device on sale in the United States prior to April 1996."  Mr. Sherman also states that he has reviewed the advertising literature (the Diasonics brochure) and asserts that it was "printed in April 1996 and that it was widely distributed to potential customers of the device."
> ***
> As supporting documentation, Sonosite has provided a copy of a brochure created by Diasonics, which describes the Compact System.  The only date information on the brochure is a notation on the last page which reads "Diasonics Ultrasound Pt. No. 925-00001-00 Rev C 4/96."  This is the only possible corroboration on the document that suggests that the device was on sale on or before April of 1996.  This evidence is not enough, however, to trigger the on sale bar.  At best, this date corroborates Mr. Sherman's testimony that the brochure was printed in April of 1996.
>
> Thus, the Court finds that Sonosite does not provide sufficient evidence to corroborate Sherman's testimony.  Rather, Sonosite asks the Court to draw inferences from a date on a brochure and the testimony of an individual who does not provide a date certain for Diasonics's sale of the Compact System, but rather testifies that it was on sale "before April 1996."  The Court finds that this information, without something more definite to show that the device was actually on sale, fails to meet the clear and convincing evidence standard necessary to trigger the on-sale bar.

*Id.* at 946-47 (citations omitted).

SVS' evidence is insufficient as a matter of law, without documentary corroboration, to surmount the clear and convincing evidence hurdle.  On this closed record, it is impossible for SVS to present the MicroTrax Manual at trial in an admissible form.  This is grounds for denial

of summary judgment under Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). Establishing that the MicroTrax Manual is a printed publication constitutes an essential element to SVS' Motion for Summary Judgment. Because SVS failed to identify or produce any evidence to corroborate any testimony that the MicroTrax Manual was publicly disseminated prior to the critical date, all other facts relating to the MicroTrax Manual are necessarily rendered immaterial and denial of summary judgment is mandated. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### D.   SVS Applied Insufficient Analyses Under §§ 102 & 103.

#### 1.   *Anticipation*

To prove anticipation by clear and convincing evidence, SVS must show that every element of the claimed invention is identically shown in a single reference, that the elements are arranged in the same way as in the claims, and that the alleged prior art is enabling to one skilled in the art. SVS and its expert, Ms. Breitzke, do not mention, let alone address, the necessary elements of arrangement or enablement.

#### a.   Arrangement

To prove anticipation under 35 U.S.C. § 102 (b), a prior art reference must expressly or inherently disclose each and every element of the claimed invention. *Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*, 471 F.3d 1369, 1375 (Fed. Cir. 2006). Those elements must be "arranged or combined in the same way as in the claim." *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1370 (Fed. Cir. 2008). "The prior art reference must clearly and unequivocally disclose the claimed invention or direct those skilled in the art to the invention without any need for picking, choosing, and combining various disclosures not directly related to each other by the teachings of the cited reference." *Id.* at 1371 (citation and internal alterations omitted).

Ms. Breitzke sets forth her insufficient understanding and belief of what anticipation requires in her Initial Report as follows:

> I understand that a claim is invalid when a single prior art reference (as defined by the various paragraphs of 35 U.S.C. § 102) existed prior to the claim's priority date and teaches every element of the claim.   In the following sections, I will identify where each element of claims 1-38 is found in each reference.

(D.I. 86-1, Breitzke Initial Report at 37).   Ms. Breitzke later testified that she is unaware of any component of an anticipation analysis under 35 U.S.C. § 102, *except* to identify the elements of the patent-in-suit in the alleged prior art.   (D.I. 111-1, Ex. 1, Breitzke Dep. at 72:19-74:19).

The bases for Ms. Breitzke's opinion and SVS' argument are incorrect and simply insufficient.   This Court recently held:

> [M]ere disclosure of each and every limitation of a claim is not enough for anticipation.   "An anticipating reference must enable that which it is asserted to anticipate."   *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1345 (Fed. Cir. 2008) (internal citations omitted).   Furthermore, a single prior art reference must also disclose the limitation as arranged in the claim.   *See Net MoneyIn, Inc. v. Verisign, Inc.*, 545 F.3d 1359, 1371 (Fed. Cir. 2008) ("[U]nless a reference discloses within the four corners of the document not only all of the limitations claimed but also all of the limitations arranged or combined in the same way as recited in the claim, it cannot be said to prove prior invention of the thing claimed and, thus, cannot anticipate under 35 U.S.C. § 102.").

*Laboratory Skin Care, Inc. v. Limited Brands, Inc.*, Case No. 1:06-cv-00601-LPS, D.I. 301 at 15 of 19 (D. Del. Dec. 6, 2010).

Picking and choosing portions of the reference to cobble together an anticipation opinion or argument is inadequate:

> The requirement that the prior art elements themselves be "arranged as in the claim" means that claims cannot be "treated . . . as mere catalogs of separate parts, in disregard of the part-to-part relationships set forth in the claims and that give the claims their meaning."   *Lindemann Maschinenfabrik GMBH v. Am. Hoist & Derrick Co.*, 730 F.2d 1452, 1459 (Fed. Cir. 1984).

*Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332 (Fed. Cir. 2010) (holding that jury instruction that made sufficient, for purposes of anticipation, a prior art disclosure of

individual claim elements that "*could* have been arranged" in a way that was not itself described was legally erroneous), *reh'g en banc granted, opinion vacated on other grounds by* 374 Fed. Appx. 35 (Fed. Cir. April 26, 2010).[2]

There can be no credible dispute that SVS, through its expert Ms. Breitzke or otherwise, fails to show that each of the elements of the MicroTrax Manual are arranged, combined, or linked in the identical way as in the '859 Patent.  CAT alerted SVS to the insufficiency of Ms. Breitzke's opinion when it served Dr. Grimes' Rebuttal Expert Report wherein Dr. Grimes specifically noted the absence of a showing of arrangement.  (*See* D.I. 105-7, Ex. G, Grimes Rebuttal Report at ¶¶46-49).

Ms. Breitzke was allowed to submit a Rebuttal Report, yet she did not correct this omission, and made no mention of arrangement in her Rebuttal Report.  Likewise, SVS fails to mention or even address this necessary element of arrangement in its moving papers.  Because arrangement is an essential element of an anticipation analysis under § 102, SVS has failed to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, and denial of summary judgment is thus mandated.  *Celotex*, 477 U.S. at 322-23.

### b.    Enablement

A party alleging anticipation must also establish that the reference enables the claimed invention that is allegedly anticipated.  "To serve as an anticipating reference, the reference must enable that which it is asserted to anticipate."  *Elan Pharm., Inc. v. Mayo Foundation*, 346 F.3d 1051, 1054 (Fed. Cir. 2003).  Enablement requires that "the prior art reference must teach one of ordinary skill in the art to make or carry out the claimed invention without undue

---

[2]    Specific examples of SVS and Ms. Breitzke's failure to appreciate or apply the arrangement requirement were set forth in CAT's brief in support of its Motion for Summary Judgment and are incorporated herein.  (*See* D.I. 110 at 4-6).

experimentation." *Minnesota Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1306 (Fed. Cir. 2002) (citation omitted); *accord Impax Labs., Inc. v. Aventis Pharms., Inc.,* 545 F.3d 1312, 1314 (Fed. Cir. 2008).  The only way one can show that a reference enables a method is to show that a person of ordinary skill in the art would know how to practice or to carry out the method in light of the reference.  *In re Gleave,* 560 F.3d 1331, 1335 (Fed. Cir. 2009).

SVS, through its expert Ms. Breitzke or otherwise, fails to mention or even address the enablement requirement of § 102.   This omission is not trivial.   The Federal Circuit has repeatedly found no anticipation as a matter of law when litigants fail to adduce evidence of enablement:

> Noticeably absent from the record is *testimony or evidence* about what disclosure was actually sent with the samples, let alone whether it was enabling.   The defendant's [sic] have not highlighted any evidence of record that supports a jury finding that a person of ordinary skill in the art, upon receipt of the Ricoseal samples, would have any of the requisite information to make the claimed invention.   Thus there cannot be anticipation by knowledge under § 102(a).

*Minnesota Mining*, 303 F.3d at 1306 (emphasis added).

This case rises and falls on expert testimony.   SVS named Ms. Breitzke as its lone expert on invalidity.   Her testimony on anticipation is insufficient as a matter of law to establish the existence of arrangement and enablement,[3] two essential elements of SVS' anticipation case, and upon which SVS bears the burden of proof.   Because SVS cannot meet its burden of proof, its Motion for Summary Judgment of anticipation must be denied.

---

[3]     CAT seeks to strike the entirety of Ms. Breitzke's opinions pursuant to CAT's *Daubert* Motion.   (*See* D.I. 107 & 108).

2.      *Obviousness*

a.      SVS, Through Its Expert Ms. Breitzke Or Otherwise, Has Not Mentioned Or Addressed a Required Element to Prove Obviousness Under § 103—Reasonable Expectation of Success

SVS also fails to submit sufficient evidence to establish a *prima facie* case of obviousness.  An obviousness determination requires that a person having ordinary skill in the art would have perceived a reasonable expectation of success in making the invention in light of the prior art.  *Amgen, Inc. v. F. Hoffman-LA Roche, Ltd.*, 580 F.3d 1340, 1362 (Fed. Cir. 2009) (citing *In re Kubin*, 561 F.3d 1351, 1360 (Fed. Cir. 2009) ("[S]tated in the familiar terms of this court's longstanding case law, the record shows that a skilled artisan would have had a resoundingly 'reasonable expectation of success' in deriving the claimed invention in light of the teachings of the prior art.")).  "Reasonable likelihood of success must be proven by clear and convincing evidence." *F. Hoffman-LA Roche*, 580 F.3d at 1362.

Ms. Breitzke's report failed to identify a reasonable expectation of success in modifying or combining the disclosure in the MicroTrax Manual with the disclosure in Murphree.  Ms. Breitzke did not fix this omission in her Rebuttal Report or at her deposition.  Rather, she admitted that she is unaware that a "reasonable likelihood of success" must be shown to prove obviousness:

Q.      Anything else that you you're aware of that needs to be proven in order to establish obviousness under Section 103 besides the identification of each element by two or more references and then establishing a motivation to combine?

\*\*\*

THE WITNESS:  I'm not aware of anything else.  That's what I did.

Q.      All right.  That's what you believe the test to be and that's what you did?

\*\*\*

THE WITNESS:  Yeah.  I was not taking a test, but if you look at my report, that is information that I provided.

(D.I. 111-1, Ex. 1, Breitzke Dep. at 79:15-20; 80:1-5, 8-10) (objections omitted).

SVS similarly fails to mention, much less address, the necessary requirement of proving a "reasonable likelihood of success."   SVS and Ms. Breitzke's failure to address a reasonable expectation of success is reminiscent of their failure to address arrangement or enablement.   If they were unaware of this requirement prior to this lawsuit, it was certainly brought to their attention when CAT served Dr. Grimes' Rebuttal Expert Report, wherein Dr. Grimes specifically noted that the reasonable expectation of success element had not been addressed.   (*See* D.I. 105-7, Ex. G, Grimes Rebuttal Report at ¶¶23 & 226).   Ms. Breitzke was even allowed to submit a Rebuttal Report, and yet she did not correct this omission, and made no mention of a reasonable expectation of success in her Rebuttal Report.

SVS has again failed to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, and denial of summary judgment is thus mandated.   *Celotex*, 477 U.S. at 322-23.

       b.    Ms. Breitzke's Opinion Regarding Obviousness of Independent Claims Based on Combination of Prior Art Is Conclusory and Thus Inadmissible

Realizing that the Ms. Breitzke's Initial Report did not provide an opinion of obviousness of the independent claims of the '859 Patent (claims 1, 10, 20 & 29), SVS attempted to backdoor an obviousness opinion through Ms. Breitzke's Rebuttal Report.[4]   However, Ms. Breitzke's obviousness opinion is clearly inadmissible and hardly enough to meet the high burden of clear and convincing evidence.   Ms. Breitzke's opinion is nothing more than a stock conclusory statement that if the '859 Patent is not anticipated, it is obvious.

---

[4]    SVS was allowed (over CAT's Motion to Strike) to serve Ms. Breitzke's Rebuttal Report and represented to the Court that her Rebuttal Report contained no new opinions.  Ms. Breitzke, however, contradicted the representation made to the Court and admitted her Rebuttal Report contained new opinions, namely, obviousness opinions concerning the independent claims of the '859 Patent.  CAT has renewed its request that Ms. Breitzke's Rebuttal Report be stricken.  (D.I. 108 at 19-20).

Following her discussion of the MicroTrax Manual in her Rebuttal Report, Ms. Breitzke states the following:

> To the extent that any of these disclosures in MicroTrax Manual do not anticipate a specific claim limitation Dr. Grimes's [sic] cites in his claim charts, for the reasons stated above, it would have been obvious to one of ordinary skill in the art to utilize the specific disclosure referenced in my reports for that claim element to meet the specific limitation of that claim element.

(D.I. 85-1, Breitzke Rebuttal Report at 10).  SVS' obviousness argument in its brief in support of summary judgment mirrors the foregoing.  (D.I. 103 at 27-28).

This is precisely the type of cursory analysis that led to the Federal Circuit's recent affirmance of the exclusion of expert testimony in *Innogenetics, N.V. v. Abbott Laboratories*:

> For each of the claims that he analyzes for obviousness, Dr. Patterson merely lists a number of prior art references and then concludes with the stock phrase "to one skilled in the art it would have been obvious to perform the genotyping method[.]"  There must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness.  To facilitate review, this analysis should be made explicit.  Nowhere does Dr. Patterson state how or why a person ordinarily skilled in the art would have found the claims of the '704 Patent obvious in light of some combination of those particular references.  As the district court found: "It is not credible to think that a lay jury could examine the [references] that defendant cited as prior art or any of the other references and determine on its own whether there were differences among them and the '704 Patent."  Such vague testimony would not have been helpful to a lay jury in avoiding the pitfalls of hindsight that belie a determination of obviousness.

512 F.3d 1363, 1373 (Fed. Cir. 2008) (citations and internal quotations omitted).

SVS and Ms. Breitzke's conclusory opinions likewise fail to articulate any reasoning or any rational underpinnings for their conclusion.  Vague testimony and argument would not be helpful to a lay jury and would encourage the pitfalls of hindsight specifically prohibited under *Graham v. John Deere Co.*, 383 U.S. 1, 36 (1966).

The only other portion of Ms. Breitzke's Rebuttal Report which addresses the MicroTrax Manual with regard to obviousness is the following:

> To the extent that these disclosures in MicroTrax Manual do not anticipate the claim limitation "entering a clerk authorization code for initiating a debit purchase transaction," it would have been obvious to one of ordinary skill in the art to utilize the "checker ID" or "manager ID" as a clerk authorization code for initiating a debit purchase transaction.  The purpose of both the "checker ID" and "manager ID" is to authorize transactions on behalf of the merchant.

(D.I. 85-1, Breitzke Rebuttal Report at 7-8).  SVS repeats this assertion in its brief.  (D.I. 103 at 27-28).  To the extent that Ms. Breitzke's opinion is that the "purpose" provides the basis for her "obviousness analysis," her opinion should be rejected as contrary to law.  *See KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 419 (2007) ("In determining whether the subject matter of a patent claim is obvious, neither the particular motivation nor the avowed *purpose* of the patentee controls.  What matters is the objective reach of the claim.") (emphasis added).

Ms. Breitzke's obviousness opinions are clearly inadmissible and cannot be used to sustain summary judgment.  *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1325 (Fed. Cir. 2005) (conclusory expert testimony "hardly enough" to meet "high burden of clear and convincing evidence with respect to anticipation and obviousness.").

### E.    SVS Misapplies and Ignores the Claim Construction

SVS' burden of proof to show invalidity must begin with the proper application of the claims as construed by the Court and set forth in its *Markman* Order.  An expert, or any other witness, may not base their opinions on a claim construction inconsistent with Court's *Markman* Order and related decisions.  *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006); *see also LP Matthews LLC v. Bath & Body Works, Inc.*, 458 F.Supp.2d 198, 208 (D. Del. 2006) (where the claim construction has significantly narrowed the scope of the patent claims, the focus of the prior art references must also be "substantially sharpened.").

### 1.    SVS Disregards the Court's Claim Construction Relating to the Three Distinct Authorization Codes in the '859 Patent

During claim construction, SVS argued that the only types of "authorization codes" in the '859 Patent were the "customer authorization code" and the "clerk authorization code."  SVS urged that the "general authorization code" should be construed to incorporate the "clerk authorization code" and the "customer authorization code."  (D.I. 61 at 23).  Specifically, SVS argued that the "general authorization code" is satisfied by any action which would likewise satisfy either the "clerk authorization code" or the "customer authorization code."  (D.I. 43 at 23).  CAT, on the other hand, argued that the "general authorization code" and its functions were wholly distinct from and broader than either the "customer authorization code" or the "clerk authorization code" terms and their corresponding functions.  (D.I. 61 at 23-24).

The Court specifically rejected SVS' positions and agreed with CAT:

> Finally, I agree with CAT that the general "authorization code" language of claims 20 and 29 is broader than the "customer authorization code" and "clerk authorization code" terms. The general "authorization code" language does not specify that any particular party must enter the "authorization code." Also, the function of this general "authorization code"—"for having the computer initiate communications with the host data processor"—is broader than the functions of the "customer authorization code" ("authorizing access to a customer data base of a host data processor") or the "clerk authorization code" ("initiating a debit purchase transaction").

(D.I. 61 at 24).

The misapplication and disregard for the Court's claim construction permeates SVS' brief in support of summary judgment, and is epitomized in SVS' "Statement of Facts" paragraphs 121-124.  Therein, SVS sets forth that any code that satisfies the "customer authorization code" or the "clerk authorization code" would also, *ipso facto*, satisfy the "general authorization code."  This clearly demonstrates SVS' dogged insistence that there are only two codes (a position rejected during claim construction) and is in direct contravention of the Court's ruling that there are three distinct codes with three distinct functions.

21

The improper application of the Court's claim construction is further evidenced by Ms.

Breitzke's deposition testimony:

> Q.     Can you think of even hypothetically an instance where a code could exist
>        that would satisfy the clerk authorization code as you've defined it or in
>        the definition you're using that wouldn't likewise satisfy the general
>        authorization code?
> ***
> THE WITNESS:  You're asking me hypothetically if I can think of a code that
>        would be, according to the Court's claim construction, a clerk
>        authorization code and not be an authorization code?
>
> Q.   Yes.
> ***
> THE WITNESS:  Within the scope of the '859 patent, one does not come to mind.

(D.I. 111-1, Ex. 1, Breitzke Dep. at 105:1-17) (objections omitted).

> Q.     Then that would automatically, if you will, satisfy the general
>        authorization code for initiating communications with the host data
>        processor?
> ***
> THE WITNESS:  I think as I've applied the claim construction with regards to the
>        prior art that I've shown, that as I indicate, *entering a clerk authorization
>        code in combination of entering the customer authorization code satisfies
>        the entering an authorization code.*

(*Id.* at 107:8-19) (objection omitted) (emphasis added).

> Q.     But you did not find a single situation where the clerk code didn't subsume
>        the general authorization code?
> ***
> THE WITNESS:  I -- as we discussed earlier, I would have to go through all of
>        the different pieces of prior art and all of those different pages, *but I
>        indicate that the authorization code is a combination of entering the clerk
>        authorization code and the customer authorization code which I indicate
>        in most cases is the PIN.*

(*Id.* at 115:22-116:12) (objection omitted) (emphasis added).

The Court's *Markman* Order unambiguously distinguishes between the "general

authorization code" and the "clerk authorization code."  This distinction prevents SVS from

showing that a "clerk authorization code" exists in the prior art in the manner it attempts.  The

*Markman* Order also underscores why the Examiner and Re-Examiner found the "clerk authorization code" to be patentable subject matter.

The *Markman* Order, in distinguishing between the general "authorization code" and the "clerk authorization code," relied upon the Gutman Patent and the Examiner's notes as follows:

> The examiner initially rejected as anticipated the general "authorization code" term based on the Gutman patent (U.S. Pat. No. 5,221,838), but indicated that the related "customer authorization code" and "clerk authorization code" terms were allowable subject matter.   This implies that the examiner viewed the "authorization code" term as broader than the other (allowable) terms.  *See In re Skvorecz*, 580 F.3d 1262, 1266 (Fed. Cir. 2009).

(D.I. 61 at 24).

The Examiner found that the "general authorization code" of the '859 Patent was disclosed in the Gutman Patent as a required "password entered before proceeding with [other] functions of the device."  (D.I. 111-1, Ex. 2, Gutman Patent at 7:66-8:2).  Obviously, both the Examiner and Re-Examiner determined that the '859 Patent's "clerk authorization code for initiating a debit purchase transaction" is a distinct code with a function distinct from a "password entered before proceeding with other functions of the device."  Likewise, this Court determined that the "clerk authorization code" and the "general authorization code" of the '859 Patent were distinct codes with distinct functions.

SVS and Ms. Breitzke refuse to acknowledge or apply this distinction.  In fact, both SVS and Ms. Breitzke continually argue that the "general authorization code" is synonymous with the "clerk authorization code" and thus satisfied by the same disclosure in the prior art.  (*See* D.I. 103 at ¶123 (asserting that the "general authorization code" and "clerk authorization code" are satisfied by the same disclosure); *see also* D.I. 86-1, Breitzke Initial Report at 116-119; D.I. 85-1, Breitzke Rebuttal Report at 2, 3, 4, 7, 10, 11, 12, 15, 16 & 18).

SVS argues that the MicroTrax Manual discloses the "clerk authorization code" by way of a "checker ID" or, alternatively, a "manager's ID number."  Both of these assertions can only be made by ignoring the Court's claim construction and/or ignoring the fact that these are not identical to the construed "clerk authorization code."  For a prior art reference to anticipate in terms of 35 U.S.C. § 102, every element of the claimed invention must be identically shown in a single reference.  *Diversitech Corp. v. Century Steps, Inc.*, 850 F.2d 675, 677 (Fed. Cir. 1988) (citation omitted); *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1991) ("There must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention."), *overruled on other grounds by Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282 (Fed. Cir. 2009).

The "checker ID" relied upon by SVS is actually a "checker sign on."  (D.I. 106-2-10, Ex. 4-Parts 1-9 to Ex. A, MicroTrax Manual at 2-7).  The "checker sign on" is a code that makes the terminal "ready to accept transactions" and "allows the terminal to accept electronic payments."  (*Id.*).  In other words, the "checker sign on" is a "password entered before proceeding with other functions of the device."  The Examiner found that Gutman's disclosure of a "password entered before proceeding with other functions of the device" was the "general authorization code" set forth in the '859 Patent, but both the Examiner and Re-Examiner found the "clerk authorization code" to be distinct patentable subject matter.  Here, this Court also found during the *Markman* proceedings that the "clerk authorization code" was a distinct code with a function distinct from the "general authorization code."

In setting forth the steps for a "debit purchase transaction," the MicroTrax Manual neither discloses a clerk authorization code being entered to initiate a debit purchase transaction nor do any of the steps involve entry of the "checker sign on" code.  (D.I. 106-2-10, Ex. 4-Parts 1-9 to

Ex. A, MicroTrax Manual at 2-15 through 2-19, 3-22 through 3-27).  Clearly, the "checker sign on" is not a code for initiation of a debit purchase transaction but, rather, is a "password entered before proceeding with other functions of the device" and, at best, a disclosure of the "general authorization code" as set forth in the '859 Patent.

SVS and Ms. Breitzke's attempt to utilize the MicroTrax Manual's "checker sign on" to satisfy both the "[general] authorization code" and the "clerk authorization code" elements is inaccurate and contrary to the *Markman* Order.  Dr. Grimes, in his expert opinion, specifically opines that the "clerk authorization code" is not expressly or inherently disclosed in the MicroTrax Manual, that the MicroTrax Manual does not render the claims of the '859 Patent obvious, and that SVS and Ms. Breitzke's reliance upon the "checker sign on" is incorrect.  (D.I. 105-7, Ex. G, Grimes Rebuttal Report at ¶¶60-71, 81; Ex. 2, Grimes Surrebuttal Report at ¶¶44-69).

       2.     *SVS Disregards the Court's Claim Construction Relating to the Term "Debit Purchase Transaction" in the '859 Patent*

Next, SVS and Ms. Breitzke assert that the "manager's ID number" in the MicroTrax Manual satisfies the "clerk authorization code" in the '859 Patent.  In order to make this assertion, SVS and Ms. Breitzke once again ignore the Court's claim construction and attempt to apply SVS' rejected construction.

During claim construction, SVS proposed that the term "debit purchase transaction" to mean *any* "transaction made using a debit styled card."  CAT proposed the term to mean "a purchase transaction."  The Court construed the term to mean, "A *purchase transaction* made using a debit styled card."  (D.I. 61 at 15) (emphasis added).

Ms. Breitzke ignores the Court's claim construction and applies SVS' rejected construction that "debit purchase transactions" include *any* transaction using a debit styled card,

such as returns, voids, and credits.  (D.I. 111-1, Ex. 1, Breitzke Dep. at 135:12-19; 138:18-139:16; 143:16-144:6; 147:6-16; 149:14-22; 152:6-9; 157:3-16; 157:22-158:9; 269:3-8).  SVS repeats this error of misapplying the Court's claim construction consistently throughout its summary judgment brief.  (D.I. 103 at 25-28).

A review of the MicroTrax Manual clearly exhibits that the "manager's ID number" is used only in transactions involving a return or void and not in a "debit purchase transaction." (D.I. 106-2-10, Ex. 4-Parts 1-9 to Ex. A, MicroTrax Manual at 2-27, 2-31 & 3-42).  When reviewing the MicroTrax Manual with respect to a *"debit purchase transaction,"* there is absolutely no "manager's ID number" being utilized.  (*Id.* at 2-15 through 2-19, 3-22 through 3-27).  Consequently, the "manager's ID number" could never satisfy the "clerk authorization code for initiating a debit purchase transaction" because it is never disclosed as being used during a debit purchase transaction.  In fact, the MicroTrax Manual teaches away from the concept of a "manager's ID number" (or any other code) being used during a "debit purchase transaction."

SVS also disregards the Court's claim construction by failing to acknowledge the difference between a manager and a clerk.  The Court ruled during claim construction that the "clerk authorization code" must be entered by the "clerk."  (D.I. 61 at 20-21).  During her deposition, Ms. Breitzke conceded that there was no disclosure in the MicroTrax Manual which indicated that a checker was authorized or would be allowed to enter the manager ID.  (D.I. 111-1, Breitzke Dep. at 270:1-4; 271:5-11).

SVS also fails to mention that Mr. Lineck specifically testified that a clerk would never have access to a manager ID:

> A.   To my knowledge, every installation we've ever put in always has the prompt for the manager ID.  Anytime you're putting money back into a customer's account, you have to have -- they would always have a manager authorize it.  I can tell you why, if you'd like.

> Q.  Actually, why?
>
> A.  Some of the checkers unfortunately aren't too honest, and so if they have their friends there, they can be putting money back on their friends' accounts.  And so the manager was required to come make sure that that was acceptable, to put money back into this person's account.

(Ex. 1, Lineck Dep. at 69:23-70:9).  This testimony teaches directly against SVS' concept that a "manager's ID number" could satisfy the "clerk authorization code."

Dr. Grimes opines that the "clerk authorization code" of the '859 Patent is not expressly or inherently disclosed in the MicroTrax Manual, that the MicroTrax Manual does not render the claims of the '859 Patent obvious, and that SVS and Ms. Breitzke's attempt to argue that the "manager's ID number" satisfies this element is incorrect.  (D.I. 105-7, Ex. G, Grimes Rebuttal Report at ¶¶72-81; Ex. 2, Grimes Surrebuttal Report at ¶¶38-43, 56-70).

In sum, SVS' attempt to identify a "clerk authorization code" within the MicroTrax Manual is made solely through a misapplication of the Court's claim construction.  The Examiner, Re-Examiner, and this Court found that the "clerk authorization code" is wholly distinct from the "general authorization code."  SVS' attempt to make these codes synonymous directly contravenes this Court's claim construction.

If SVS disagreed with the claim construction, it was obligated to appeal from the Report and Recommendation—it did not do so.  A district court's claim construction becomes "the law of the case."  *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersystems GmbH*, 2008 WL 410413 at *5 (D. Colo. Feb. 12, 2008); *Taurus IP, LLC v. DaimlerChrysler Corp.*, 559 F.Supp.2d 947, 968 (W.D. Wis. 2008) ("Taurus's decision to proceed in the face of this court's constructions prolonged the litigation in bad faith.").

## V.      CONCLUSION

SVS has failed in its attempt to invalidate the '859 Patent.  SVS' motion for summary

judgment should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*Of Counsel:*

J. David Wharton (MO Bar #20347)
Mark J. Peterson (NE Bar #18850)
Nora M. Kane (NE Bar #21562)
STINSON MORRISON HECKER LLP
1299 Farnam Street, Suite 1500
Omaha, NE 68102
(402) 342-1700
jwharton@stinson.com
mpeterson@stinson.com
nkane@stinson.com

and

Keith H. Orum
Mark D. Roth
Orum & Roth, LLC
53 W. Jackson Boulevard, Suite 1616
Chicago, Illinois 60604
Telephone: (312) 922-6262
Facsimile: (312) 922-7747
keithorum@gmail.com
markdroth@gmail.com

January 14, 2011

*/s/ Julia Heaney*
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com

*Attorneys for Defendant*
*Card Activation Technologies, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 14, 2011 I electronically filed the foregoing with

the Clerk of the Court using CM/ECF, which will send notification of such filing to:

> Richard L. Horwitz
> David E. Moore
> POTTER ANDERSON & CORROON LLP

I further certify that I caused to be served copies of the foregoing document on

January 14, 2011 upon the following in the manner indicated:

## <u>BY ELECTRONIC MAIL</u>

Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
1313 North Market Street
Wilmington, DE  19801

Alan M. Fisch
Coke Morgan Stewart
Jason F. Hoffman
Roy William Sigler
KAYE SCHOLER LLP
The McPherson Building
901 Fifteenth Street, NW
Washington, DC  20005-2327

/s/ ***Julia Heaney***
Julia Heaney (#3052)